UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARUS HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 08 C 1535 |
| | ) | |
| BANNER & WITCOFF, LTD., CHARLES | ) | Judge Hart |
| CALL; and EUGENE NELSON, | ) | |
| | ) | Magistrate Judge Denlow |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT BANNER
& WITCOFF, LTD.'S MOTION TO DISMISS COUNTS II, IV, AND V OF
PLAINTIFF'S COMPLAINT, TO DISMISS, IN PART, COUNT I OF
PLAINTIFF'S COMPLAINT AND TO DISMISS AND/OR STRIKE
PLAINTIFF'S PUNITIVE DAMAGES CLAIM**

Plaintiff, Parus Holdings, Inc., by and through its attorneys, James J.
Stamos and Matthew J. McDonald of Stamos and Trucco LLP, requests that this
Court enter an Order denying Defendant's Motion to Dismiss.

I.     **Parus Properly Alleges a Cause of Action for  Banner's
       Misappropriation of Trade Secrets Under the Illinois Trade Secret Act**

Count V of the Complaint asserts a claim against Banner, Call, and Nelson
for their misappropriation of Vail's and Parus' trade secrets in violation of the
Illinois Trade Secret Act, 765 ILCS 1065/1 *et seq.* ("ITSA").  Banner argues that
Parus has failed to state a cause of action under the ITSA because Parus does not
allege that Banner used Vail's trade secrets in its business.  Banner's position that
a plaintiff must allege use of the misappropriated trade secret in a defendant's
business to state a cause of action under the ITSA is incorrect.  "Use is just one

theory that can be pursued under the ITSA; it is not the only theory." *Liebert Corp. v. Mazur, et al.* 357 Ill.App.3d 265, 281, 827 N.E.2d 909, 925, 293 Ill.Dec. 28, 44 (1st Dist. 2005).  The court in *Liebert Corp.* rejected the argument that a trade secret must be used in a defendant's business to establish a violation of the ISTA and held:

> A misappropriation of tradesecrets occurs when a person acquires *or* discovers a tradesecret by improper means *or* <u>discloses</u> *or* uses a trade secret in a breach of a duty of confidentiality imposed on him by the nature of his relationship with the owner of the tradesecret or reposed in him by the owner in disclosing the information, and the owner of the tradesecret is damaged by this improper acquisition, disclosure or use.  *Id.*, citing *American Antenna Corp. v. Amperex Electronic Corp.,* 190 Ill.App.3d 535, 538, 546 N.E.2d 41, 137 Ill.Dec. 417 (2nd Dist. 1989).

(Emphasis added).Consistent with this holding, Parus alleges that Banner misappropriated its trade secret by disclosing it to Swartz.  *See* Complaint ¶¶ 52, 54.

Under *Liebert Corp.,* the elements for trade secret misappropriation are: "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure or use; and (3) the owner of the trade secret was damaged by the misappropriation." *Liebert Corp.* 357 Ill.App.3d at 281. Parus has satisfied these elements.  Specifically, Parus alleges the Vail Provisional was a trade secret and Banner was duty bound to maintain its secrecy.  *See* Complaint ¶¶ 52, 54. Parus further alleges that Defendants willfully and maliciously disclosed Vail's trade secret to Swartz without Vail's knowledge or consent.  *Id.* ¶ 52.  Finally, Parus alleges it was damaged by Defendants' willful and malicious disclosure of

Vail's trade secret in that it was forced to expend $1.3 million in legal fees to reverse the effect of the disclosure and its licensing program was rendered valueless. *Id.* ¶ 54. Parus has clearly alleged a violation of the ISTA and Banner's motion with respect to Count V must be denied.

**II.    Parus Sufficiently Alleges It Is Vail's Successor-in-Interest and has the Right to Sue Banner for Its Legal Malpractice and Breaches of Duty**

Banner attacks Counts II and IV on the ground that a mere assignment of patent rights does not confer the right upon the assignee to sue the assignor's lawyer for legal malpractice. However, Parus has not alleged it is the assignee of Vail's patent rights. Instead, Parus clearly alleges that it is the owner of certain patents and is Vail's successor-in-interest. *See Complaint* ¶¶ 1, 2, 7, 15, 27, 32, 35, 36, 48. More specifically, Parus alleges it is the successor-in-interest to VE Systems, that portion of Vail's business responsible for the development and marketing of the System. *Id.* at ¶ 2, 7. Part and parcel of that business are the System itself, the two Parus Patents that protect the System, the marketing plan which Swartz was initially hired to develop and implement, and the continued employment at Parus of former Vail employees and management personnel, including Alex Kurganov, the primary innovator and inventor of the System and Parus' Chief Technology Officer. *Id.*

The rule that the assignment of a patent does not, by itself, transfer the attorney-client relationship to the assignee does not apply to "the myriad ways control of a corporation or a portion of a corporation can change hands." *Soverain*

*Software LLC v. The GAP, Inc. and Amazon.Com, Inc.*, 340 F.Supp.2d 760, 763 (E.D. Texas 2004). Instead, "whether the attorney-relationship transfers to the new owners turns on the practical consequences rather than the formalities of the particular transaction." *Id.* citing *Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123, 668 (1996). Thus, "If the practical consequences of the transaction result in the transfer of control of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Id.*

In this case, control of "a portion" of Vail's business "changed hands" when Parus became the successor-in-interest to Vail's web telephony business, VE Systems. *See* Complaint ¶¶2, 7. This change in control was much more than a mere assignment of patent rights. Instead, it was the continuation of that portion of Vail's business responsible for the development and marketing of the System. While Vail continues to exist as an ongoing, independent corporation, that portion of its business built around the development and marketing of the System exists only in Parus. The practical consequence of this transaction is that Parus became the successor-in-interest to that distinct portion of Vail's business and now stands in its shoes as it relates to Vail's attorney-client relationship with Banner. Parus' status as successor-in-interest is based on much more than a mere assignment of patent rights and transfers to it the right to sue Banner for its malpractice and breaches of duty as it relates to Banner's representation of Vail. As such, Counts II and IV of Parus' complaint should stand.

### III. Parus is Entitled to Recover the Attorney's Fees it Incurred in Attempting to Disqualify Banner & Witcoff in the Underlying Litigation

Count I is a claim against Banner for its representation of Swartz in the underlying litigation. This count seeks to recover the attorney's fees Parus incurred in asserting its claim against Swartz. A crucial part of Parus' litigation against Swartz was seeking to have Defendants disqualified as Swartz's attorneys and a substantial amount of fees were incurred in furtherance of this effort. *See* Complaint ¶ 37.

Banner bases its argument that Parus is barred from recovering the fees it incurred in seeking to have Banner disqualified on a confused and confusing New York court order entered in *Steinberg v. Harmon,* 259 A.D. 2d 318 N.Y.S.2d 423 (1999). *Steinberg* appears to stand for the proposition that a plaintiff in New York can only recover the fees it incurred in the context of a successful motion to disqualify in one of two ways. First, the party whose motion to disqualify is granted can request the fees in the same litigation in which the motion was granted. *Id.* Second, that party can maintain a separate cause of action by demonstrating a "chronic, extreme pattern of legal delinquency such as would support a cause of action under Judiciary Law § 487." *Id.* Banner attempts to convert this non-precedential New York state court order into a federal rule requiring a plaintiff in Parus' position to seek to recover the fees at issue by way of a motion for sanctions under Fed. R. Civ. P. 11. No such rule exists and no authority required Parus to do what Banner argues it "should" have done.

Notwithstanding *Steinberg's* lack of precedential value, it is distinguishable because the Plaintiff's law suit there sought only the fees it incurred in its successful bid to have its former counsel disqualified. Here, Banner withdrew before the Court had the opportunity to rule on Parus' motion to disqualify and the case was subsequently settled. Moreover, because Parus was forced to file suit against Swartz as a result of Banner's malpractice, it seeks to recover all of the fees it incurred in that litigation, not just those related to the motion to disqualify, plus additional damages.

According to Banner, the only way Parus could have recovered the fees at issue was to file another motion in the underlying litigation after Banner withdrew its appearance and was no longer involved in the case. This course of action would have necessarily triggered another round of briefing, further delayed the court's consideration of the actual merits of the case, further delayed settlement negotiations and settlement, and caused Parus to incur yet more fees as a result of Banner's malfeasance. There is simply no authority that required Parus to take this course of action to recover the fees at issue. Parus is entitled to recover its damages suffered due to Banner's misconduct, including the fees it incurred in seeking to have Banner disqualified.

## IV.    Parus is Entitled to Recover Punitive Damages for Banner's Misappropriation of Trade Secrets and Breach of Fiduciary Duty

Although not specifically addressed in Banner's motion to dismiss or supporting memorandum, Parus properly seeks punitive damages for Banner's

misappropriation of trade secrets in violation of the ITSA. Section § 1065(4)(b) of

the ITSA provides that "if willful and malicious misappropriation exists, the court

may award exemplary damages in an amount not exceeding twice any award made

under subsection (a)."    Although Section 2/1115 of the Illinois Code of Civil

Procedure bars punitive damages in legal malpractice suits, no such bar exists

when the "wrongful act complained of is characterized by wantonness, malice,

oppression or other circumstances of aggravation." *Brush v. Glisdorf*, 335

Ill.App.3d 356, 362, 783 N.E.2d, 77, 81, 270 Ill.Dec. 502, 506 (3rd Dist. 2002). In

Count V, Parus alleges that Defendants willfully and maliciously disclosed Vail's

trade secret to Swartz without Vail's knowledge or consent. Complaint ¶ 52. This

intentional act, characterized by its willfulness and maliciousness, clearly falls

outside of the traditionally accepted "rubric of legal malpractice"  and entitles

Parus to recover punitive damages pursuant to Section § 1065(4)(b) of the ITSA.

Similarly, Count I properly seeks punitive damages for Banner's breach of

duty in representing Swartz in the underlying litigation. In determining whether

735 ILCS 5/2-1115 bars the recovery of punitive damages in a breach of fiduciary

claim, "the court must look to the nature of the behavior alleged in plaintiffs'

complaint to determine whether the activities fall within the term legal

malpractice." *Brush* 335 Ill.App.3d at 630 (internal quotations omitted). A claim

for legal malpractice "consists of [the] failure of an attorney to use such skill,

prudence, and diligence as lawyers of ordinary, skill and capacity commonly

possess and exercise in performance of tasks which they undertake." *Brush* 335 Ill.App.3d at 360, citing *Black's Law Dictionary* 959 (6th ed.1990).

Banner relies on *Owens v. McDermott, Will & Emery* 316 Ill.App.3d 340 (1st Dist. 2000) to argue that Count I asserts a simple legal malpractice claim, thereby barring the recovery of punitive damages under 735 ILCS 5/2-1115. In *Owens*, the court did not consider the availability of punitive damages and merely observed that one count of the Plaintiff's complaint asserted both a claim for legal malpractice as well as breach of fiduciary duty. *Id.* at 351. In that case, the Plaintiff's breach of fiduciary duty claim against his former lawyers was based on his allegation that they improperly removed certain restrictions on stock to which he purported to hold a right of first refusal. *Id.* at 353. The *Owens* plaintiff alleged that the lawyers' breach of duty prevented him from purchasing the stock while allowing his former employer to do so at his detriment. *Id.* Recognizing that the mere fact that an attorney may have violated a rule of professional ethics does not, by itself, give rise to a cause of action, the court upheld the dismissal of this claim on the grounds that Plaintiff himself contracted his right of first refusal away when he signed a Voting Agreement. *Id.* Thus, the dismissal of this count was upheld because the plaintiff's loss of his right of first refusal was not proximately caused by the breach of fiduciary duty, if any, of his former attorneys. *Id.*

Unlike the plaintiff in *Owens*, Parus alleges more then a mere violation of Rule 1.9. Instead, it alleges that Banner undertook its representation of Swartz to

protect itself from the effects of its own misdeeds, including its wrongful disclosure of Parus' trade secrets and its fraudulent concealment of the claims Parus had against it. Banner's representation of Swartz was not a "negligent act or omission constituting [a] breach of duty" that characterizes the scienter element of every claim for legal malpractice. *Owens* 316 Ill.App.3d at 351. Instead, Parus alleges that Banner operated under a self-evident conflict of interest in its representation of Swartz and undertook that course of representation to protect its own interests at the expense of Parus. *See* Complaint ¶¶ 27, 35(e), 36. The self-interest with which Banner undertook its representation of Swartz and the egregiousness of that representation in the face of this clear conflict goes far beyond the failure to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess. Moreover, this self-interest and the manifest nature of the conflict of interest constitute aggravating factors that render 735 ILCS 5/2-1115 inapplicable and warrant the availability of punitive damages under the facts alleged in the complaint. As such, Banner's attempt to have Parus' claim for punitive damages in Counts I and V must be rejected.[1]

## V.    Conclusion

For the foregoing reasons, Plaintiff, Parus Holdings Inc. respectfully requests that this Court enter an Order denying Defendant, Banner & Witcoff Ltd.'s motion to dismiss and motion to strike Plaintiff's punitive damages claim.

---

[1] Parus concedes that Counts II and IV assert claims for legal malpractice for which punitive damages are unavailable.

In the event that this Court grants Defendant's motion, or any portion thereof, Plaintiff respectfully requests that it be granted leave to file an amended complaint.

Respectfully submitted,

  /s/  James J. Stamos
One of the attorneys for Plaintiff, Parus Holdings Inc.

James J. Stamos
Matthew J. McDonald
STAMOS & TRUCCO LLP
30 West Monroe Street, Suite 1600
Chicago, Illinois 60603
(312) 630-7979