IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PARUS HOLDINGS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 08 C 1535** |
| | ) | |
| v. | ) | **Hon. Judge William T. Hart** |
| | ) | |
| **BANNER & WITCOFF, LTD., et al.,** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT BANNER & WITCOFF, LTD.'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

I.  **PARUS LACKS STANDING TO ALLEGE LEGAL MALPRACTICE
FOR ALLEGED BREACHES OF DUTIES THAT DEFENDANT OWED
TO VAIL SYSTEMS, INC.**

Parus lacks standing to sue Banner & Witcoff for legal malpractice if it is a

successor-in-interest solely by virtue of becoming an owner of one of Vail's assets or

divisions.  *See, e.g., Plant Genetic Systems, N.V. v. Ciba Seeds,* 933 F. Supp. 514, 517

(M.D.N.C. 1996); *SMI Industries Canada, Ltd. v. Caelter Industries, Ltd.,* 586 F.

Supp. 808, 815-16 (N.D.N.Y. 1984); *Telectronics Proprietary, Ltd. v. Medtronic,*

*Inc.,* 836 F.2d 1332, 1336 (Fed. Cir. 1988).  A corporation that acquires a division of

another corporation does not succeed to the privileges between the acquired division

and its attorney, unless the acquisition was by a merger, rather than by an asset sale.

*See Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski LLP,* 178

S.W.3d 40, 44 (Tex. App. 2005).

Parus' Complaint does not allege facts showing that its purported acquisition

of Vail's web telephony business (or the so-called VE Systems division of Vail)

occurred through anything other than an assignment of Vail's patent. Specifically,

paragraph 2 of the Complaint alleges that Parus is the successor-in-interest to Vail's

web telephony business in that "Parus is the owner of the patents secured by Vail that

protect a unique computer controlled telephony system." Paragraph 7 alleges that

"VE Systems was the division of Vail's business responsible for the development and

marketing of the System." Finally, paragraph 19 alleges that Vail obtained two

patents related to the System and that "Both of these patents are currently assigned to

and owned by Parus."[1]

Parus' Complaint is strikingly similar to the facts in *Greene's Pressure*

*Treating & Rentals, supra. Greene's Pressure Treating & Rentals* involved the sale

of a method of commissioning pipelines, called the "Coulter Process". Fulbright &

Jaworski provided a legal opinion to the original company operating the Coulter

Process, concerning whether it infringed a patent held by BJ Services ("BJS"), known

as the '842 patent. The Coulter Process was subsequently sold to Greene's Pressure

---

[1]    Furthermore, leave to amend to allege that Parus is the successor to Vail by means other than
an acquisition of Vail's patents would be futile. Parus is the successor-in-interest to Voice Box
Services, Inc., a corporation that existed in February 1997, at the time that Banner & Witcoff, Ltd.
filed the provisional patent application. Voice Box Services changed its name to Webley Systems,
Inc. in March 1997 and was an Illinois corporation. *See* Exhibit 1. Alexander Kurganov assigned his
rights, title and interest in the patent application to Vail in July 1998. *See* Exhibit 2 (Parus'
interrogatory answers from the Swartz lawsuit). That same month, Vail assigned its right, title and
interest in the Kurganov patents to Webley Systems. *Id.* Webley Systems then merged with Webley
Systems, Inc. (a Delaware corporation) in July 1998. *Id.* In 2003, Webley changed its name to Parus
Holdings, Inc. *Id.* Finally, in February 2004, Webley assigned all of its assets to Parus. *Id.* At best,
Parus is the successor-in-interest to Voice Box Services, Inc., not Vail Systems, Inc. Furthermore, the
chain of title shows that Parus acquired rights to the Vail/Kurganov patents only through Vail's
*assignment* of those patents to Webley Systems in 1998. The foregoing facts are pertinent only if the
Court is inclined to consider granting leave to Parus to amend, to clarify the basis for its allegation that
it is the successor to Vail. The Court need not make a determination on the merits of whether Parus is
or is not the successor-in-interest to Vail or VE Systems, because the allegations in the Complaint are
insufficient to provide Parus with standing to sue Banner & Witcoff for breaches of duties allegedly
owed to Vail.

Treating & Rentals, Inc. ("Greene"). BJS, represented by Fulbright & Jaworski, sued

Greene for infringement of the '842 patent. Greene moved to disqualify Fulbright &

Jaworski and settled its suit with BJS before the motion was decided. *See* 178 S.W.3d

at 42. Greene then sued Fulbright & Jaworski for legal malpractice, breach of

fiduciary duty and violations of the Deceptive Trade Practices Act, based on Fulbright

& Jaworski's representation of BJS adverse to Greene.

Greene asserted that it could sue Fulbright & Jaworski on the precise theory

that Parus alleges it may sue Banner & Witcoff. Greene contended that its acquisition

of the Coulter Process "constitutes a continuation of 'an operating division or unit of a

company' and because it was 'that division or unit to which representation by the

attorney applies, [thus] the privileges between the attorney and the division of the

company sold should transfer.'" *Id.* at 44. The court held that Fulbright & Jaworski

owed no duty to Greene. Greene obtained the Coulter Process through an asset

acquisition, not a merger. Further, rather than taking over the ongoing operations of

the selling entity, Greene was merely acquiring just one of the selling entity's assets

in order to conduct its own operations. *Id.* The court also found pertinent the fact

that Greene never sought or obtained legal services from Fulbright & Jaworski. *Id.*

Parus presents a similar argument. Parus' Complaint alleges that it became the

owner of an asset of Vail's – the patents protecting the telephony "System". *See*

Complaint at ¶2. Parus does not allege that it took over the ongoing operations of

Vail. Indeed, it is agreed that Vail is a corporation in good standing and it continues

to conduct business. Further, Parus does not allege that it ever communicated with or

sought legal advice from Banner & Witcoff, Ltd. As in *Greene's Pressure Treating*

3

& *Rentals, Inc.,* the allegations in Parus' Complaint are insufficient to establish that

Banner & Witcoff, Ltd. owed Parus a duty of care.

Parus suggests that the Court should adopt a test described in *Soverain*

*Software LLC v. The Gap, Inc.,* 340 F. Supp.2d 760, 763 (E.D. Tex. 2004), whereby

"whether the attorney-relationship transfers to the new owners turns on the practical

consequences rather than the formalities of the particular transaction." *Soverain*

*Software* employed an overbroad reading of the law and was incorrect in finding that

something less than an assumption of the management and operations of the

predecessor corporation suffices to pass the attorney-client relationship to the

acquirer. The cases upon which *Soverain Software* relied involve situations where the

successor entities were formed through mergers with their predecessor entities, or

where the successor took over all of the operations and management of the

predecessor entities. *Id., citing Tekni-Plex, Inc. v. Meyer and Landis,* 89 N.Y.2d 123,

127, 674 N.E.2d 663, 665 (1996) ("Tekni-Plex merged into Acquisition, with

Acquisition the surviving corporation, and Tekni-Plex ceased its separate existence");

*and Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 352-53, 105 S.

Ct. 1986, 1992-93 (1985) (bankruptcy trustee assumed managerial and operational

responsibility for debtor corporation). Thus, in order for the attorney-client

relationship to pass to the new entity, the "practical consequences" of the transaction

must be that the acquirer takes over the management and operations of the

predecessor entity. Acquiring one of the original entity's technologies or business

units is not enough to allow the attorney-client relationship to pass to the acquirer.

Senior Judge Lindberg of this Court has analyzed whether or not the attorney-client relationship passes to an entity that acquires assets or a division of another company that continues to exist after the transfer of its division. *See Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 2003 WL 21911066 (N.D. Ill., Aug. 7, 2003). In *Zenith Electronics Corp.*, Zenith sold one of its businesses and transferred "all intangible personal property to the extent used or held for use in the conduct of the Business (including, without limitation, . . . all rights, *privileges, claims, causes of action and operations relating to or pertaining to the Business or the Assets)." *Id.* at *1. In addition, the acquirer received privileged documents relating to the business that was sold to it. *Id.* at *2. Even though the operations and rights of the business were being transferred, along with privileged documents, this Court held that the attorney-client privilege did not transfer to the acquiring corporation. Citing *Weintraub, supra,* the Court recognized the general premise in *Soverain Software,* namely, that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* However, the transfer of Zenith's business did not involve the passing of control of a corporation; it merely involved the transfer of the assets and operations of one of Zenith's businesses. *Id.* at *1. Zenith, the entity which had the attorney-client relationship, continued to exist. Parus' alleged acquisition of Vail Systems' web telephony business is no different than Zenith's transfer of its business.

As alleged, Banner & Witcoff's relationship was with Vail Systems, Inc. Parus does not dispute that Vail Systems continues to exist as a legal, operating entity. At most, Parus alleges that it acquired a technology or business unit of Vail Systems.

That limited acquisition is not enough to provide Parus with standing to sue Banner &
Witcoff for alleged breaches of duty it owed to Vail Systems. Even if one assumes
the proposition that Parus acquired the web telephony business carried on by the so-
called VE Systems division, Parus' claims must be dismissed.

## II.    THE COMPLAINT FAILS TO ALLEGE A BASIS FOR THE IMPOSITION OF PUNITIVE DAMAGES.

### A.    Count I Asserts a Cause of Action That Falls Within the Rubric of Legal Malpractice.

Illinois law prohibits the recovery of punitive damages in legal malpractice
cases. *See* 735 ILCS 5/2-1115 ("§1115"). Parus concedes in its Opposition that
Counts II and IV of its Complaint are "claims for legal malpractice for which punitive
damages are unavailable." *See* Opposition at fn. 9. Parus also acknowledges the
holding in *Owens v. McDermott, Will & Emery* that a cause of action that is based
upon a lawyer's bringing suit against his former client, in violation of Rule 1.9, falls
within the rubric of legal malpractice. 316 Ill.App.3d 340, 351, 736 N.E.2d 145, 155
(1st Dist. 2000). However, Parus argues that the allegations of Count I go beyond the
scope of §1115 because it alleges intentional, rather than negligent, conduct. Parus'
distinction is without merit.

Illinois courts have held that §1115's prohibition against punitive damages
applies equally to intentional breaches of fiduciary duty. For instance, in *Calhoun v.
Rane*, 234 Ill.App.3d 90, 599 N.E.2d 1318 (1st Dist. 1992), the First District held that
"the section 2-1115 prohibition of punitive damage in legal malpractice cases also
applies to intentional fraud arising from the provision of legal services." *Id.*, 234
Ill.App.3d at 99, 599 N.E.2d at 1323.

6

The application of §1115 turns on the presence of traditional legal malpractice elements: a duty arising from an attorney-client relationship, breach of that duty, and damages arising from the breach. *See McDermott, Will & Emery*, 316 Ill.App.3d at 352. Here, Count I alleges that: (1) Banner & Witcoff, Ltd. owed Plaintiff a duty as a result of their alleged attorney-client relationship, *see* Complaint at ¶¶32-34; (2) Banner & Witcoff, Ltd. either intentionally or negligently breached that duty, *id.* at ¶35; and, (3) Plaintiff suffered damages as a result of that breach. *Id.* at ¶37. Regardless of the title Parus assigns to the count, Count I seeks to remedy an alleged breach of a duty arising out of the attorney-client relationship.

In fact, some of the breaches of duty alleged in Count I are also alleged in Counts that Parus concedes are for legal malpractice. For instance, Count I alleges that Banner & Witcoff, Ltd. breached fiduciary duties by "Using and revealing confidential information obtained from Vail in its defense of Swartz without obtaining Parus' consent in violation of Illinois Rule of Professional Conduct 1.6." Similarly, Count II alleges legal malpractice as a result of Banner & Witcoff, Ltd. allegedly "Using and revealing confidential information obtained from Vail in assisting Swartz to secure personal patent rights in the System without requesting or obtaining Vail's or Parus' consent, in violation of Illinois Rule of Professional Conduct 1.6." *Cf.* Complaint at ¶35(b) and ¶41(d). Thus, the allegations in Count I fall within the rubric of legal malpractice. The common element of both claims is that Banner & Witcoff, Ltd. allegedly breached duties owed to Parus by using information gathered during its purported representation of Vail to benefit Swartz's interests, rather than Parus' interests.

7

Parus cites *Brush v. Gilsdorf,* 335 Ill.App.3d 356, 270 Ill. Dec. 502, 783 N.E.2d 77 (3rd Dist. 2002), in support of its argument that Count I is not a claim for legal malpractice. The plaintiff in *Brush* sued his attorney for breach of fiduciary duty arising out of the attorney's representation of the plaintiff while the attorney had a conflict of interest. The court concluded that §1115 *was* applicable because the lawyer's alleged conflict of interest was a claim that fell within the rubric of legal malpractice. *Id.,* 335 Ill.App.3d at 360-61. In *dictum,* the court noted that an exception may exist if the plaintiff alleges fraud, as opposed to a breach of fiduciary duty. *Id.,* 335 Ill.App.3d at 360, 783 N.E.2d at 80.[2] Parus does not allege that Banner & Witcoff, Ltd. defrauded it by defending Swartz in Parus' lawsuit, nor can Parus reasonably make such an allegation.

Furthermore, Parus' Opposition incorrectly implies that *Brush* holds that punitive damages are available in legal malpractice cases when aggravating circumstances are present. Quite to the contrary, *Brush* stands for the proposition that aggravating circumstances must be present in order to allow for punitive damages in *non-malpractice* claims against attorneys. *Brush,* 335 Ill.App.3d at 361.

Simply put, Parus' attempt to characterize Count I as anything other than a legal malpractice claim is illusory. Parus' demand for punitive damages in Count I should be dismissed.

---

[2]     There is a conflict among the state appellate courts as to whether fraud in the course of representing a client is excepted from §1115's bar to punitive damages. *Cf. Calhoun v. Rane, supra.*

**B.**    **Parus' Demand for Punitive Damages in Count V is Barred by §1115.**

Parus argues that Count V alleges a violation of the Illinois Trade Secrets Act and is not a claim for legal malpractice. Consequently, Parus contends that Count V falls outside the scope of §1115. However, Count V is merely another legal theory applicable to Defendants' alleged breaches of duties they owed in the course of their legal work in prosecuting the Swartz patents.

In Count V, Parus alleges that "as Vail's attorneys, [Defendants] had acquired Vail's trade secrets under circumstances giving rise to a duty to maintain its secrecy" and that Defendants breached that duty "by disclosing the Vail Provisional to Swartz and using it to assist Swartz in filing competing non-provisional patent applications..." *See* Complaint at ¶¶53-54. These allegations are consistent with a claim for legal malpractice and, in fact, are nearly identical to those contained in counts that Parus labels as "Legal Malpractice". *See, e.g.*, Complaint at ¶41(d) (Banner & Witcoff breached fiduciary duties and was negligent in "[u]sing and revealing confidential information obtained from Vail in assisting Swartz to secure personal patent rights in the System without requesting or obtaining Vail's consent"; ¶45(e) (Defendant Call "breached his fiduciary duties and was negligent in his representation of Vail by... [u]sing Vail's confidential information to prepare Swartz's patent applications.")

Parus' Opposition also suggests that the ITSA's punitive damage provision should take precedence over §1115's prohibition against such damages in legal malpractice actions. Parus' analysis misconstrues the rules of statutory interpretation.

9

The primary objective in construing a statute is to "ascertain and give effect to the intention of the legislature, and to this end all other rules of construction are subordinate." *Barragan v. Casco Design Corp.,* 216 Ill.2d 435, 441, 837 N.E.2d 16, (2005). When two statutes cannot be read harmoniously, the "more specific statute controls that which is more general." *People v. Maya,* 119 Ill.App.3d 961, 965, 457 N.E.2d 501 (1983); *Byrne v. City of Chicago,* 215 Ill.App.3d 698, 710, 576 N.E.2d 19 (1991).

In the first instance, the ITSA and §1115 are not in conflict with one another. By its terms, §1115 requires that it is to be applied without regard to other laws that may permit punitive damages:

> Punitive damages are not recoverable in. . . legal malpractice cases. In all cases, whether in tort, contract *or otherwise*, in which the plaintiff seeks damages by reason of legal. . . malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed.

735 ILCS 5/2-1115 (emphasis added).

By including the phrase "or otherwise", the legislature necessarily intended that §1115 apply to any type of cause of action against an attorney in which the gravamen is for legal malpractice. To read the statute in any other way would violate a cardinal principle of statutory construction – it would render the term "or otherwise" meaningless. *See Paulson v. County of DeKalb,* 268 Ill.App.3d 78, 83, 644 N.E.2d 37, 40 (1994). By way of comparison, the Tort Immunity Act's prohibition against punitive damages "notwithstanding any other provision of law" was construed to recognize, but trump all other statutes and common law actions which may allow the assessment of punitive damages against a local public entity. *Id.*

10

If, as Parus suggests, the ITSA and §1115 are irreconcilably in conflict with respect to the availability of punitive damages, then the Court must apply the more specific statute, which is §1115. *See, e.g., Tosado v. Miller*, 188 N.E.2d 1075, 188 Ill.2d 186, 195 (1999). In *Tosado*, the Illinois Supreme Court construed conflicting provisions in the Tort Immunity Act, 745 ILCS 10/1-101, and the Hospital section of the Illinois Code of Civil Procedure, 735 ILCS 5/13-212. In determining which of the statutes was more specific, the Court looked to the legislative intent of the conflicting statutes. The court noted that, in enacting the Tort Immunity Act, the "legislature focused on a particular group of defendants." *Id.*, 188 Ill.2d at 194-195. Thus, the court held that when construing the two conflicting statutes, the focus of the inquiry "should be on the nature of the defendants rather than the type of the cause of action." *Id.* The court found that the Tort Immunity Act applied to a narrower group of defendants than the Hospital section of the Code of Civil Procedure and, thus, was more specific and controlling. *Id.*

Here, §1115's bar against punitive damages clearly focuses on a specific class of defendants: attorneys and doctors. On the other hand, the Illinois Trade Secrets Act is a general cause of action applicable to any person or entity. Therefore, as §1115 applies to a narrower category of defendants, it is the more specific statute. As the more specific statute, it is controlling over the conflicting ITSA provision. *Id.*

## III.   PLAINTIFF SEEKS TO EMPLOY A STANDARD FOR STATING A CLAIM UNDER THE ITSA THAT HAS BEEN PROPOSED BY ONLY ONE COURT DECISION.

Parus cites *Liebert Corp. v. Mazur*, 357 Ill.App.3d 265, 827 N.E.2d 909 (1st Dist. 2005), for the proposition that a cause of action may be stated under the Illinois

11

Trade Secrets Act ("ITSA") if a defendant is alleged to have done nothing more than disclose a trade secret to someone else.  The panel that decided *Liebert Corp.* stands alone in its decision.  Not a single Illinois state or federal court decision – including subsequent decisions in the First District – has adopted the ruling in *Liebert Corp.* or held that mere disclosure of a trade secret suffices to state a cause of action under the ITSA.  On the other hand, every Illinois decision since *Liebert Corp.* – including cases citing to *Liebert Corp.* – has held that a claim for misappropriation of trade secrets under the ITSA must allege that a defendant used the trade secret in its business.  *See Arcor, Inc. v. Haas*, 363 Ill.App.3d 396, 400-01, 842 N.E.2d 265, 269-70 (1st Dist. 2005) (citing *Liebert Corp.* but holding that a plaintiff must allege that the defendant used the trade secret in its business); *Papa John's International, Inc. v. Rezko*, 446 F. Supp.2d 801, 810-11 (N.D. Ill. 2006 (same); *Exhibit Works, Inc. v. Inspired Exhibits, Inc.*, 2005 WL 3527254, *6-7 (N.D. Ill. 2005) (same); *Multiut Corp. v. Draiman*, 359 Ill. App.3d 527, 535-36, 834 N.E.2d 43, 49-50 (1st Dist. 2005) (same); *RRK Holding Co. v. Sears, Roebuck & Co.*, 2007 WL 495254, *2 (N.D. Ill., Feb. 14, 2007); *United States Gypsum Co. v. LaFarge North America, Inc.*, 508 F. Supp.2d 601, 623 (N.D. Ill. 2007).  Consequently, to the extent that the panel's decision in *Liebert Corp.* stands for the proposition that a cause of action under the ITSA may be stated by alleging that a defendant merely disclosed a trade secret, the holding is not accepted law in Illinois, as reflected by subsequent decisions.

## IV.    PARUS DOES NOT STATE A CAUSE OF ACTION FOR THE RECOVERY OF ATTORNEYS' FEES.

Parus does not cite any case law that is contrary to the decision in *Estate of Steinberg v. Harmon* that a "request for fees, if recoverable, should have been raised in the proceeding in which the disqualification occurred." 259 A.D.2d 318, 686 N.Y.S.2d 423 (1999). Instead, Parus complains that the rule of law in *Steinberg* would have required it to file a motion for fees in the underlying litigation against Swartz, which would have resulted in more costs and fees to Parus in that lawsuit. This is a distinction without difference, as the cost of filing a motion to recover Parus' attorneys' fees for Banner & Witcoff, Ltd.'s allegedly unsupported opposition to Parus' motion to disqualify would have been far less than the cost of bringing and pursuing the present legal malpractice action.

Furthermore, Parus' attempt to distinguish *Steinberg* is misguided. Parus contends that *Steinberg* is inapposite because the trial court there actually decided the motion to disqualify in favor of the plaintiff, whereas the court in the Swartz lawsuit did not decide Parus' motion to disqualify because Banner & Witcoff, Ltd. eventually withdrew its appearance. Here, too, the distinction is without merit. As alleged, Parus incurred its legal fees in the Swartz lawsuit as a result of Banner & Witcoff, Ltd.'s alleged bad faith in opposing Parus' motion to disqualify. Parus did not need a final ruling on the motion to disqualify in order to seek its attorneys' fees under Rule 11 or 28 U.S.C. §1927. If Banner & Witcoff, Ltd. acted in bad faith or vexatiously in serving as local counsel to Swartz and in opposing Parus' motion to disqualify, then

Parus would have had a basis for seeking sanctions even before an order was entered on its motion to disqualify.

Thus, Count I of Parus' Complaint should be dismissed, to the extent that it seeks as damages the attorneys' fees incurred in attempting to disqualify Banner & Witcoff, Ltd. in the underlying litigation.

## V.    CONCLUSION.

For the foregoing reasons, Defendant, Banner & Witcoff, Ltd., respectfully requests that this Court enter an Order dismissing Plaintiff's demand for punitive damages, dismissing Counts II, IV and V of Plaintiff's Complaint and dismissing, in part, Count I of Plaintiff's Complaint.

Dated: July 11, 2008                    Defendant, BANNER & WITCOFF, LTD.


                                        _____/s/ Jeffrey T. Petersen_____
                                             One of its attorneys

Brian E. Martin
Jeffrey T. Petersen
Bell Boyd & Lloyd LLP
70 West Madison Street
Suite 3100
Chicago, Illinois  60602-4207
(312) 372-1121
jpetersen@bellboyd.com
bmartin@bellboyd.com

Pamela A. Bresnahan
Steven R. Becker
Vorys, Sater, Seymour and Pease LLP
1828 L Street, N.W.
11th Floor
Washington, D.C.  20036-5109
(202) 467-8800
pabresnahan@vorys.com
srbecker@vorys.com

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2008, a copy of Banner &

Witcoff, Ltd.'s Reply in Support of Its Motion To Dismiss was served pursuant to

ECF delivery for the following ECF users:

> James J. Stamos, Esquire
> Matthew J. McDonald, Esquire
> Stamos & Trucco LLP
> 30 West Monroe Street
> Suite 1600
> Chicago, Illinois  60603

> ___/s/ Jeffrey T. Petersen_____
> Jeffrey T. Petersen

# Exhibit 1

File Number    5925-920-2

# State of Illinois
## Office of
## The Secretary of State

**Whereas,**    ARTICLES OF INCORPORATION OF
VOICE BOX SERVICES, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

Now Therefore, I, George H. Ryan, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this 10TH day of FEBRUARY A.D. 19 97 and of the Independence of the United States the two hundred and 21ST

*George H Ryan*
Secretary of State

C-212.2

EXHIBIT
ALL-STATE LEGAL®
14

Form **BCA-2.10** | **ARTICLES OF INCORPORATION**

(Rev. Jan. 1995)
George H. Ryan
Secretary of State
Department of Business Services
Springfield, IL 62756

Payment must be made by certified check, cashier's check, Illinois attorney's check, Illinois C.P.A's check or money order, payable to "Secretary of State."

This space for use by Secretary of State

**FILED**

FEB 10 1997

GEORGE H. RYAN
SECRETARY OF STATE

**SUBMIT IN DUPLICATE!**

This space for use by Secretary of State
Date  2 - 10 - 97
Franchise Tax  $  3 5.
Filing Fee  $  7 5
Approved:  2 + 0 0

1. CORPORATE NAME: _____ Voice Box Services, Inc. _____

**PAID**

**FEB 10 1997**

(The corporate name must contain the word "corporation", "company," "incorporated," "limited" or an abbreviation thereof.)

2. Initial Registered Agent:

| Scott | L. | Glickson |
|---|---|---|
| First Name | Middle Initial | Last name |

   Initial Registered Office:

| 444 | North Michigan Avenue | Suite 3600 |
|---|---|---|
| Number | Street | Suite # |
| Chicago | IL | 60611 | Cook |
| City | | Zip Code | County |

3. Purpose or purposes for which the corporation is organized:
   (If not sufficient space to cover this point, add one or more sheets of this size.)

   The nature of business or purpose or purposes for which the corporation is organized is to engage in any lawful act or activities for which corporations may be organized under the Illinois Business Corporation Act of 1983, as amended.

4. Paragraph 1: Authorized Shares, Issued Shares and Consideration Received:

| Class | Par Value per Share | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Therefor |
|---|---|---|---|---|
| Common | $0.001 | 100,000 | 10,000 | $ 1,000 |

TOTAL = $1,000

Paragraph 2: The preferences, qualifications, limitations, restrictions and special or relative rights in respect of the shares of each class are:
(If not sufficient space to cover this point, add one or more sheets of this size.)

**EXPEDITED**

FEB 10 1997

**SECRETARY OF STATE**

5925-920-2

(over)

**5. OPTIONAL:**  (a) Number of directors constituting the initial board of directors of the corporation:_____

(b) Names and addresses of the persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualify:

| Name | Residential Address | City, State, ZIP |
|------|---------------------|------------------|
|      |                     |                  |
|      |                     |                  |
|      |                     |                  |

**6. OPTIONAL:**  (a) It is estimated that the value of all property to be owned by the corporation for the following year wherever located will be:    $_____

(b) It is estimated that the value of the property to be located within the State of Illinois during the following year will be:    $_____

(c) It is estimated that the gross amount of business that will be transacted by the corporation during the following year will be:    $_____

(d) It is estimated that the gross amount of business that will be transacted from places of business in the State of Illinois during the following year will be:    $_____

**7. OPTIONAL:**  **OTHER PROVISIONS**
Attach a separate sheet of this size for any other provision to be included in the Articles of Incorporation, e.g., authorizing preemptive rights, denying cumulative voting, regulating internal affairs, voting majority requirements, fixing a duration other than perpetual, etc. (see attached addend

**8.**  **NAME(S) & ADDRESS(ES) OF INCORPORATOR(S)**

The undersigned incorporator(s) hereby declare(s), under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated ___February 7_____ , 19__97__ .

|   | Signature and Name(s) |   | Address |   |   |
|---|-----------------------|---|---------|---|---|
| 1. | *Shauna J. West* | 1. | 444 North Michigan Avenue, Suite 3600 |   |   |
|   | Signature |   | Street |   |   |
|   | Shauna J. West |   | Chicago | IL | 60611 |
|   | (Type or Print Name) |   | City/Town | State | Zip Code |
| 2. | _____ | 2. | _____ |   |   |
|   | Signature |   | Street |   |   |
|   | (Type or Print Name) |   | City/Town | State | Zip Code |
| 3. | _____ | 3. | _____ |   |   |
|   | Signature |   | Street |   |   |
|   | (Type or Print Name) |   | City/Town | State | Zip Code |

(Signatures must be in **BLACK INK** on original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.)

NOTE: If a corporation acts as incorporator, the name of the corporation and the state of incorporation shall be shown and the execution shall be by its president or vice president and verified by him, and attested by its secretary or assistant secretary.

**FEE SCHEDULE**

- The initial franchise tax is assessed at the rate of 15/100 of 1 percent ($1.50 per $1,000) on the paid-in capital represented in this state, with a minimum of $25.
- The filing fee is $75.
- The minimum total due (franchise tax + filing fee) is $100.
  (Applies when the Consideration to be Received as set forth in Item 4 does not exceed $16,667)
- The Department of Business Services in Springfield will provide assistance in calculating the total fees if necessary.

Illinois Secretary of State        Springfield, IL 62756
Department of Business Services   Telephone (217) 782-9522 or 782-9523

C-162.18

# VOICE BOX SERVICES, INC.

## ADDENDUM TO ARTICLES OF INCORPORATION

### 7. OPTIONAL: OTHER PROVISIONS

No holder of any class of shares of the corporation shall be entitled to cumulative voting rights at any time with respect to the election of directors of the corporation or any other matters which may be submitted to a vote by shareholders.

File Number    **5925-920-2**

# State of Illinois
## Office of
## The Secretary of State

**Whereas,** ARTICLES OF AMENDMENT TO THE ARTICLES OF
INCORPORATION OF
VOICE BOX SERVICES, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

Now Therefore, I, George H. Ryan, Secretary of State of the State of
Illinois, by virtue of the powers vested in me by law, do hereby issue
this certificate and attach hereto a copy of the Application of the
aforesaid corporation.

In Testimony Whereof, I hereto set my hand and cause to be
affixed the Great Seal of the State of Illinois,
at the City of Springfield, this    12TH
day of    MARCH    A.D. 19   97    and of
the Independence of the United States the two
hundred and    21ST    .

*George H Ryan*

**Secretary of State**

C-212.2

EXHIBIT
ALL-STATE LEGAL®
15

Form **BCA-10.30** | **ARTICLES OF AMENDMENT** | File # 5925-920-2
(Rev. Jan. 1995)

George H. Ryan
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-1832

**FILED**

MAR 12 1997

GEORGE H. RYAN
SECRETARY OF STATE

**PAID**
MAR 13 1997

Remit payment in check or money
order, payable to "Secretary of State."

*The filing fee for articles of
amendment - $25.00

**SUBMIT IN DUPLICATE**

This space for use by
Secretary of State
Date 3/12/97
Franchise Tax       $
Filing Fee*         $ 25.00
Penalty             $
Approved:

1.  CORPORATE NAME: Voice Box Services, Inc.
                                                                (Note 1)

2.  MANNER OF ADOPTION OF AMENDMENT:

    The following amendment of the Articles of Incorporation was adopted on ___March 11___,
    19 _97_ in the manner indicated below. ( "X" one box only)

    [X] By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors
        have been elected;
                                                                (Note 2)

    [ ] By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares
        as of the time of adoption of this amendment;
                                                                (Note 2)

    [ ] By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder
        action not being required for the adoption of the amendment;
                                                                (Note 3)

    [ ] By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly
        adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of
        votes required by statute and by the articles of incorporation were voted in favor of the amendment;
                                                                (Note 4)

    [ ] By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
        duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not
        less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who
        have not consented in writing have been given notice in accordance with Section 7.10;
                                                                (Notes 4 & 5)

    [ ] By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
        duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders
        entitled to vote on this amendment.
                                                                (Note 5)

3.  TEXT OF AMENDMENT:

    a.  When amendment effects a name change, insert the new corporate name below. Use Page 2 for all other
        amendments.

        Article I: The name of the corporation is:

        Webley Systems, Inc.
                        (NEW NAME)

    **EXPEDITED**

    MAR 12 1997

    **SECRETARY OF STATE**

                All changes other than name, include on page 2
                                (over)

### Text of Amendment

b.    *(If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety. If there is not sufficient space to do so, add one or more sheets of this size.)*

ARTICLE 4, Paragraph 1 of the Certificate of Incorporation is hereby amended and deleted in its entirety and replaced with the following:

4.   Paragraph 1:  Authorized Shares, Issued Shares and Consideration Received:

| Class | Par Value Per Share | Number of Shares Authorized | Number of Shares Issued |
|---|---|---|---|
| Common | $0.001 | 1,000,000 | 10,000 |
| Paid in Capital: | | | $1,000.00 |

4.   The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

   **No Change**

5.   (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

   **No Change**

   (b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")*

   **No Change**                              Before Amendment      After Amendment

               Paid-in Capital               $_____   $ _____

   **(Complete either Item 6 or 7 below. All signatures must be in BLACK INK.)**

6.   The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirms, under penalties of perjury, that the facts stated herein are true.

   Dated _____, 19 ____    Voice Box Services, Inc.
                                                   *(Exact Name of Corporation at date of execution)*

   attested by _____    by _____
            *(Signature of Secretary or Assistant Secretary)*        *(Signature of President or Vice President)*

            _____           _____
                 *(Type or Print Name and Title)*                  *(Type or Print Name and Title)*

7.   If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

                                   OR

   If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

   The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

   Dated  March 11 _____, 19 97

   _Shauna J. West_

   ___Shauna J. West, Incorporator___        _____

   _____               _____

   _____               _____

                              Page 3

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PARUS HOLDINGS, INC.　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )　　 Civil Action No. 1:06-cv-01146
　　　　　　 Plaintiff,　　　　　　　 )
　　　　　　 v.　　　　　　　　　　　 )　　 Judge Pallmeyer
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )　　 Magistrate Judge Valdez
WEB TELEPHONY, LLC and　　　　　　　 )
ROBERT SWARTZ　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　 Defendants.　　　　　　　 )

**PLAINTIFF PARUS HOLDINGS, INC.'S RESPONSES TO DEFENDANT WEB
TELEPHONY, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-12)**

**INTERROGATORY NO. 1.**

For each claim of the '694 Patent for which You assert that Kurganov is either the sole or joint inventor, provide a full, detailed, and specific explanation of why You contend that Kurganov is the sole or joint inventor, including each fact, opinion, inference, and argument supporting each contention; identify each person with first hand knowledge of any facts or opinions given in response to this interrogatory; and identify each document that supports the information given in response to this interrogatory.

**RESPONSE:**

Mr. Kurganov is the sole inventor of the methods claimed in Claims 1-13 of U.S. Patent

No. 6,445,694.

In about the 1991-93 time frame, Mr. Kurganov conceived and implemented a platform

for processing, connecting, and routing telephone calls using PCs with Dialogic or similar

boards. The platform designed and developed by Mr. Kurganov was used for various

applications by Vail Systems, Inc. ("Vail"). One early internal experimental application on the

platform was an application that included PBX and voice mail functionality, which was used by

some Vail employees. In about 1994, when he began working for Vail full time, Mr Kurganov

started to add features to the original PBX/voice mail application. For example, Mr. Kurganov



As presently advised, persons who have first hand knowledge of the facts or opinions concerning response to this Interrogatory include: Alex Kurganov, Clay Vollers, Alex Zarubin, James Whiteley and Beth McGinnis.

As presently advised, the documents which support the information provided in response to this interrogatory include: Par 000001-21, 000072-92, 000171-190, 000290-000309, 000455-000711, 002594-002627, 006287-006322, 009109-009325, 009326-009595.

**INTERROGATORY NO. 6.**

Provide a full, detailed, and specific explanation of why you contend that you own the Patents and Applications; IDENTIFY each person with first hand knowledge of any facts or opinions given in response to this interrogatory; and identify each document that supports the information given in response to this interrogatory.

**RESPONSE:**

Assuming that lowercase "you" means Parus Holdings, Inc., the response is as follows: Vail, Systems, Inc. ("Vail") financed all of the research and development of the network and voice controlled telephony systems disclosed in U.S. Provisional Patent App. Serial No. 60/040,056 ("the Vail Provisional"). In addition, Vail paid for the U.S. Patent and Trademark Office and attorneys' fees incurred for the preparation and filing of the Vail Provisional. Further, the attorney who filed the Vail Provisional, Gordon Nelson, named Vail as the "correspondent" for purposes of the filing of the Vail Provisional in the U.S. Patent and Trademark Office. As a result, Vail owned the inventions disclosed in the Vail Provisional.

Additionally, Defendant Swartz is not an inventor of the subject matter claimed in the Patents and Applications and the only inventor of the subject matter claimed in the Patents and Applications has formally assigned ownership of his inventions to Vail. Specifically, Vail formally obtained all right, title, and interest in and to the inventions described in the Vail Provisional and U.S. Patent Application Serial No. 09/033,335 ("the '335 Application) from Mr.

Kurganov, the sole inventor of the inventions disclosed and/or claimed in both applications. On July 23, 1998, Mr. Kurganov, formally assigned to Vail his entire right, title, and interest in and to the inventions disclosed and claimed in the '335 Application. The '335 Application incorporated by reference the Vail Provisional; therefore, Vail formally obtained all right, title, and interest in and to the inventions described in the Vail Provisional when Mr. Kurganov assigned the '335 Application to Vail.

Subsequently, on July 24, 1998, Vail assigned its entire right, title, and interest in and to the Vail Provisional and the '335 Application to Webley Systems, Inc., an Illinois corporation ("Webley Illinois"). On or about July 24, 1998, Webley Illinois merged into Webley Systems, Inc., a Delaware corporation ("Webley Delaware"), with Webley Delaware being the surviving corporation. Subsequently, on or about February 28, 2003, Webley Delaware became a wholly-owned subsidiary of Webley Corporation. Webley Corporation changed its name to Parus Holdings, Inc. on March 27, 2003. Subsequently, on February 24, 2004, Webley Delaware assigned all of its assets to Parus Holdings, Inc.

Investigation and discovery are continuing and Plaintiff reserves the right to amend this response as additional facts, documents, or persons having knowledge of the facts or opinions are found through the investigation or discovery. Plaintiffs will supplement and/or amend this response as such information becomes available or as the significance of the facts or documents is ascertained.

As presently advised, persons who have first hand knowledge of the facts or opinions concerning response to this Interrogatory include: Alex Kurganov, Robert McConnell, James Whitely, Robert Call, and Gordon Nelson.

As presently advised, the documents which support the information provided in response



to this Interrogatory include: Par 000458, 007792-007817, 008443-008453, 009631-009649;

Vail/Parus 00045, 00148, 00815; Web 08680; Banner 00002, 00004-00012.

**INTERROGATORY NO. 7.**

Provide a full, detailed, and specific explanation of the basis for Your contention in Paragraph 18 of the Complaint that patent attorneys for Vail's successor-in-interest determined that Kurganov should be "the sole named inventor;" IDENTIFY each person with first hand knowledge of any facts or opinions given in response to this interrogatory; and identify each document that supports the information given in response to this interrogatory.

**RESPONSE:**

Starting in about November 1997, counsel from the law firm of Brinks Hofer Gilson & Lione investigated inventorship, and as a result of the investigation, Mr. Kurganov was named as the sole inventor of the non-provisional application.

Investigation and discovery are continuing and Plaintiff reserves the right to amend this response as additional facts, documents, or persons having knowledge of the facts or opinions are found through the investigation or discovery. Plaintiffs will supplement and/or amend this response as such information becomes available or as the significance of the facts or documents is ascertained.

As presently advised, persons who have first hand knowledge regarding the facts or opinions concerning response to this Interrogatory include: Michael Baniak, Jeffrey Pine, Alex Kurganov, and Robert McConnell.

As presently advised, the documents which support the information provided in response to this interrogatory include: Par 008417, Vail/Parus 00039-00040, 00043, 00068-00069, 00071, 00074-00076, 00147-00148, 00842.

Parus objects to this Interrogatory to extent it requests information protected by the attorney-client privilege and/or work product immunity.

00775; Banner 00001, Defendants' Answer To The Complaint and Demand For Jury Trail ¶ 15.

Parus further objects to this Interrogatory to the extent it seeks information and/or documents protected by the attorney-client privilege and/or the work product doctrine.

Signed only as to the objections to the above Interrogatories.

June 9, 2006                                Respectfully submitted,


                                            Steve Z. Szczepanski
                                            Mary Jo Boldingh
                                            Katherine L. Tabor
                                            Scott R. Kaspar
                                            KELLEY DRYE & WARREN LLP
                                            333 West Wacker Drive
                                            Suite 2600
                                            Chicago, Illinois 60606
                                            Telephone: (312) 857-7070
                                            Facsimile: (312) 857-7095

                                            Attorneys for Plaintiff
                                            PARUS HOLDINGS, INC.