IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PARUS HOLDINGS, INC.,                    )
                                         )
              Plaintiff,                 )
                                         )
      v.                                 )    No. 08 C 1535
                                         )
BANNER & WITCOFF, LTD.,                  )
CHARLES CALL, and EUGENE NELSON,         )
                                         )
              Defendants.                )

## **OPINION AND ORDER**

Plaintiff Parus Holdings, Inc. (as the alleged
successor-in-interest to Vail Inc.) alleges that defendants
Banner & Witcoff, Ltd. ("Banner"), Charles Call, and Eugene
Nelson committed legal malpractice, breached their fiduciary
duties, and committed trade secret violations by providing
non-defendant Robert Swartz with confidential information
about Vail's application for a patent on which Vail was being
represented by defendants. Swartz allegedly used this
information to submit his own patent application for a similar
invention. Plaintiff alleges that Swartz's patent application
decreased the value of Vail's provisional patent application, the

rights to which belonged to plaintiff. It is also alleged that, as a result of defendants' misconduct, plaintiff incurred legal expenses challenging Swartz's application. Plaintiff filed this action in the Circuit Court of Cook County, Illinois. Defendant Banner removed the case[1] on the ground that resolution of certain of plaintiff's claims will require construing Vail's and Swartz's patents and therefore the case falls within federal patent jurisdiction, 28 U.S.C. § 1338. See generally Air Measurement Tech., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1267-72 (Fed. Cir. 2007); Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1284-85 (Fed. Cir. 2007). There is proper jurisdiction over plaintiff's claims. See Order dated May 29, 2008 [25]. Presently pending is defendant Banner's motion to dismiss most of the counts brought against it.[2]

---

[1]As of the time of removal, Call and Nelson had not been served with a summons.

[2]Call and Nelson have not yet responded to the Complaint. Each of them and plaintiff filed stipulations that they would respond after Banner's motion to dismiss is ruled upon. Neither defendant sought leave of court to extend the time to respond to the Complaint. Defendants should have sought such leave. Moreover such an extension would be inappropriate if defendants intend to move to dismiss since it would require multiple rulings on motions to dismiss. Call and Nelson will be required to answer the Complaint. To the extent any argument raised in Banner's motion to dismiss applies equally to the claims against Call and Nelson, those arguments will be considered as applying to the individual defendants.

The following facts are alleged in the Complaint. Vail was in the web telephony business, which involves transmitting fax and telephone communications via the internet. From 1994 to 1996, Vail developed a unique computer controlled telephony system which the Complaint refers to as the "System." Vail's primary innovator and inventor for the System was Alex Kurganov. In 1996, Vail hired Swartz. During his employment with Vail, Swartz's job titles included Vice-President of Marketing and President of VE Systems. One task assigned to Swartz was retaining counsel to advise Vail regarding obtaining patent rights for the System.

In February 1997, Swartz retained defendants. The engagement letter and other documents referred to Vail as the client and referred to submitting a provisional patent application for the System. Invoices for the legal work were submitted to and paid by Vail. On March 3, 1997, Banner filed a provisional patent application for the System on behalf of Vail (the "Vail Provisional"). Defendants did not advise Vail to obtain the assignment of rights in the patent from the System's inventor or inventors. Also, although Kurganov was the sole inventor, both Kurganov and Swartz were listed in the Vail Provisional as the inventors. Neither Vail nor Kurganov consented to listing Swartz as an inventor. There is no

- 3 -

allegation that defendants performed any legal work for Vail other than regarding the System.

During summer 1997, a dispute developed between Vail and Swartz after Vail determined Swartz lacked the qualifications and skills for his position with Vail. Call was aware of this dispute and despite the fact that Vail was Call's client, Call advised Swartz regarding the dispute and also regarding claiming rights to the patent. Vail was not informed that Call was advising Swartz. In December 1997, Vail retained new patent counsel to handle patent applications for the System and new counsel so informed Nelson, also advising him that Swartz was not an inventor of the System nor someone with any property right in the System and that Nelson should not follow any instructions from Swartz regarding the Vail Provisional.

At the end of 1997, Call left Banner. Call continued to represent Swartz and advise him regarding how to obtain patent rights for the System, including rights that would have a priority over Vail's rights. In February 1998, on Call's advice, Swartz requested that Nelson send Swartz Banner's Vail Provisional file. Despite Vail's prior instructions to the contrary, Nelson complied with Swartz's request. Defendants did not inform Vail that the file had been forwarded to Swartz.

On March 2, 1998 and August 10, 1999, Vail filed non-provisional patent applications based on inventions disclosed in the Vail Provisional. These patents issued in 2004 (the "Parus Patents"). On March 2, 1998, Call filed a non-provisional patent application on behalf of Swartz that claimed priority over the Vail Provisional. In order to claim the priority, Swartz had to specifically reference the Vail Provisional and trade secret data from that application which Swartz had learned from receiving the Vail Provisional file of Banner.[3] Swartz filed a second patent application in 2002. The two "Swartz Patents" issued in 2002 and 2004. Parus was unaware of the Swartz Patents until February 2006 when Kurganov was served with a subpoena by a defendant in a declaratory judgment action filed by Swartz to enforce his patents.

Parus expended $474,000 developing a marketing and licensing plan for the Parus Patents. When it was about to initiate this plan, it discovered the existence of the Swartz Patents. Regardless of whether the Swartz patents were meritorious or infringed on the Parus Patents, their existence and Swartz's pending lawsuit to enforce them placed a cloud on

_____

[3]It is also alleged that Call and Swartz intentionally misidentified one digit of the Vail Provisional's number and the wrong day for filing so Vail would not discover Swartz's application.

- 5 -

Parus's title to the Parus Patents. The Swartz Patents also rendered implementation of the marketing and licensing plan impossible since no one would be willing to undertake a license with the pending cloud over the Parus Patents.

Within a month after learning of the Swartz Patents, Parus brought a federal suit against Swartz and his company, Web Telephony, LLC, seeking a declaration that Parus was the rightful owner of the System and related patents, to establish priority of the invention, and to recover damages for misappropriation of trade secrets (the "Federal Suit").[4] Banner filed an appearance on behalf of Swartz in that litigation.[5] Parus informally requested that Banner withdraw because of a conflict of interest, but Banner declined. Parus then filed a motion to disqualify which resulted in a "lengthy and costly briefing process . . . . When it became apparent that Parus' motion to disqualify would be granted, Banner reluctantly withdrew from the federal litigation on the morning of the scheduled decision . . . ." Compl. ¶ 28. Several months after Banner withdrew, the case settled.

---

[4]The allegations do not specifically identify the lawsuit. Judicial notice is taken of this court's docket which reveals that the Federal Suit is <u>Parus Holdings, Inc. v. Web Telephony, LLC</u>, No. 06 C 1146 (N.D. Ill.).

[5]The Docket in the Federal Suit shows that the appearance was also on behalf of Web Telephony.

Plaintiff does not allege anything regarding the terms of the settlement.[6] Parus incurred more than $1.3 million in legal fees in the case.

Plaintiff's complaint denominates five counts, though there appears to be overlap between counts. The parties agree that the substantive law of Illinois applies to each claim. Count I is labeled as a breach of fiduciary duty claim against Banner for representing Swartz in the Federal Suit. Banner allegedly violated Illinois Rules of Professional Conduct ("IRPC") 1.6 and 1.9 by disclosing confidences of Vail/Parus, by representing an opponent of a former client in a matter related to the representation of the former client, and by using information from the prior representation to the disadvantage of the former client. Count I focuses on the Federal Suit. Allegedly, "Banner's assisting Swartz in developing and pleading defenses to Parus' claims made the case more difficult to prosecute and caused Parus to enter into a less favorable settlement agreement with Swartz than would otherwise have been possible and caused it to forfeit its ability to proceed to trial and prevail. Moreover, Banner's refusal to withdraw as counsel

---

[6]The Docket in the Federal Suit indicates that the parties were engaging in settlement discussions and then, by agreement, the case was dismissed without prejudice. Terms of any settlement are not part of the record in the Federal Suit.

for Swartz, despite the self-evident conflict of interest, and Parus' demand that it do so, obliged Parus to engage in a lengthy and costly effort to have Banner disqualified as Swartz's counsel. Banner's resistance to this effort at every step was a substantial impediment to Parus' ability to litigate its claim against Swartz because it caused Parus to consume resources and incur additional attorneys fees." Id. ¶ 36. It is also alleged that Banner "[d]epriv[ed] Parus of the assistance of its former counsel in its effort to defend and protect its patent rights in the System." Plaintiff prays for compensatory and punitive damages. As compensatory damages, plaintiff seeks the attorney fees incurred in the Federal Suit and an amount representing the loss of licensing royalties and other compensation that could not be pursued until the cloud over plaintiff's patent rights were cleared up through litigation.

Count II, against Banner and Call, is labeled legal malpractice and breach of fiduciary duty. This Count is based on a violation of IRPC 1.7 in that defendants represented a client whose interests were directly adverse to those of another client. It is alleged: "But for Call's and Banner's negligence, Swartz would not have wrongfully secured patent rights that were in direct competition with and in violation of those owned by Parus. Further, Parus would not have had to expend $1.3 million in legal

fees to defend its rights against Swartz and the licensing program for which Parus expended some $474,000 to implement would not have been rendered valueless by Swartz's competing claim." Compl. ¶ 42. Plaintiff prays "for damages suffered as a result of Call's and Banner's negligence and breach of duty, punitive damages, plus attorney's fees and interest." Count II primarily focuses on Call's advising Swartz prior to Call leaving Banner, but may cover subsequent conduct as well. It includes the allegation that Call failed to advise plaintiff to obtain an assignment of rights from the named inventors.

Count III, against Call, is also labeled as legal malpractice and breach of fiduciary duty. Count III is based on conduct of Call that occurred after he left Banner. Paragraph 46 of Count III is identical to previously quoted ¶ 42 of Count II except that it omits Banner. The prayer for relief is identical to Count III except that it omits Banner.

Count IV is also labeled as legal malpractice and breach of fiduciary duty, but is against Nelson and Banner. It is based on assisting Swartz in securing patent rights, providing the Vail Provisional file to him, failing to advise Vail to secure assignments from the named inventors, and concealing the cause of action that Parus had against these defendants. Except for the

defendants named, ¶ 50 is identical to paragraphs 42 and 46 and
the prayer for relief is identical to Counts II and III.

Count V is against all three defendants for
misappropriation of trade secrets under the Illinois Trade
Secrets Act ("ITSA"), 765 ILCS 1065.

As to Counts II and IV,[7] Banner contends that plaintiff
cannot bring a legal malpractice claim because plaintiff was not
Banner's client, Vail was. Banner contends that plaintiff can
only bring a malpractice claim if it is Vail's successor-in-
interest. Banner contends that the alleged facts only support
that plaintiff purchased patent rights or a division of Vail,
which Banner contends is insufficient to make plaintiff Vail's
successor-in-interest for purposes of bringing a malpractice
claim.

Whether plaintiff is a successor-in-interest entitled to
bring the malpractice claims goes to plaintiff's standing to
bring these claims, which is a jurisdictional issue. See
Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1210
(Fed. Cir. 1998); IFAST, Ltd. v. Alliance for Telecomm. Indus.
Solutions, Inc., 2007 WL 3224582 *1 (D. Md. Sept. 27, 2007); In
re Stevenson, 2008 WL 2003125 *1 n.4 (Bankr. Col. May 8, 2008);

---

[7]This argument also applies to the claims against Call
and Nelson contained in Counts II through IV.

- 10 -

RWB Serv., LLC v. Hartford Computer Group, Inc., 539 F.3d 681,

603 (7th Cir. 2008). Although Banner labels its motion as one

pursuant to Fed. R. Civ. P. 12(b)(6), the aspect of the motion

requesting dismissal of Counts II and IV on standing grounds is

within the ambit of Rule 12(b)(1). See id.; Patel v. City of

Chicago, 383 F.3d 569, 571 (7th Cir. 2004); Shisler v. State

Lottery Comm'n of Ind., 2008 WL 1884061 *1 (S.D. Ind. April 25,

2008); Gavin v. AT&T Corp., 543 F. Supp. 2d 885, 894 n.10 (N.D.

Ill. 2008).

> In ruling on a motion to dismiss for want of
> standing, the district court must accept as true
> all material allegations of the complaint and
> must draw all reasonable inferences therefrom
> in favor of the plaintiff. Warth v. Seldin,
> 422 U.S. 490, 501 (1975); Capitol Leasing Co., v.
> FDIC, 999 F.2d 188, 191 (7th Cir. 1993). The
> plaintiff bears the burden of establishing that
> it meets the required elements of standing.
> Lujan v. Defenders of Wildlife, 504 U.S. 555,
> 561 (1992). Where standing is challenged as a
> factual matter, the plaintiff bears the burden of
> supporting the allegations necessary for standing
> with "competent proof." McNutt v. General Motors
> Acceptance Corp., 298 U.S. 178, 189 (1936); NLFC,
> Inc. v. Devcom Mid-America, Inc., 45 F.3d 231,
> 237 (7th Cir.), cert. denied, 515 U.S. 1104
> (1995). We have interpreted "competent proof" as
> requiring a showing by a preponderance of the
> evidence, or proof to a reasonable probability,
> that standing exists. NLFC, 45 F.3d at 237.

Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862

(7th Cir. 1996). Accord Reid L. v. Illinois State Bd. of Educ.,

358 F.3d 511, 515 (7th Cir. 2004); Shisler, 2008 WL 1884061

at *1; Village of Riverdale v. 138th St. Joint Venture, 527 F. Supp. 2d 760, 763 (N.D. Ill. 2007). At the pleading stage, general factual allegations usually will be sufficient. Alliant Energy Corp. v. Bie, 277 F.3d 916, 920 (7th Cir. 2002).[8] On pleading challenges, facts alleged in response to a motion to dismiss may be considered as long as they are consistent with the allegations of the complaint. See Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000).

Here, Banner labels its motion as one pursuant to Rule 12(b)(6) and focuses on plaintiff's allegations of standing. Banner does cite to Secretary of State records as to Vail still being an ongoing corporation, but relies on those records as being facts that can be considered on a Rule 12(b)(6) motion because judicial notice can be taken.[9] As to standing, Banner's

---

[8]The Supreme Court's recent decision in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), does not affect the pleading standard for standing. Ross v. Bank of America, N.A.(USA), 524 F.3d 217, 225 (2d Cir. 2008); Riverdale, 527 F. Supp. 2d at 765-66; Gale v. Chicago Title Ins. Co., 2008 WL 4000477 *3 (D. Conn. Aug. 21, 2008). Twombly instead focuses on providing the defendant with adequate notice of the substantive claim that is alleged, which is not a standing issue. See Riverdale, 527 F. Supp. 2d at 765-66.

[9]To its reply, Banner attaches copies of Secretary of State records and some of plaintiff's answers to interrogatories in an attempt to show that it would be futile to grant plaintiff leave to amend to add additional allegations. As set forth supra in the text, however, a party may allege additional facts in answer to a motion to dismiss as long as the additional facts are

- 12 -

motion to dismiss must be viewed as one raising only pleading issues, not one raising factual issues for which plaintiff must respond with competent proof.

In the Complaint, plaintiff describes itself as follows:

> Plaintiff Parus is a Delaware corporation doing business in Illinois as the successor-in-interest to Vail's web telephony business. Parus is the owner of the patents secured by Vail that protect a unique computer controlled telephony system (the "System"). The System was conceived of and developed by Vail's primary innovator and inventor, Alex Kurganov ("Kurganov"). Kurganov is currently Parus' technology officer and is a shareholder in the corporation.

Compl. ¶ 2.

The legal work defendants allegedly performed was for Vail and is all alleged to have occurred in 1997. In the Complaint, plaintiff does not allege when or how it became Vail's

---

consistent with the Complaint. Therefore, the allegations in plaintiff's answer brief are being considered. Again, Banner does not rely on the interrogatories to raise factual issues to which plaintiff must respond with competent proof. Even if Banner were attempting to raise factual issues, it is inappropriate to attempt to go beyond the pleadings for the first time in a reply. Moreover, in asserting that plaintiff only obtained patent rights, Banner relies on an interrogatory regarding Parus's ownership of the Parus Patents. <u>See</u> Interrogatory No. 6. The interrogatory did not ask for facts supporting that Parus is Vail's successor-in-interest. The allegations in plaintiff's answer brief will be taken at face value and treated as if they are alleged in the Complaint. To the extent Banner believes evidence is contrary to these allegations, Banner may raise the factual issue in a summary judgment motion or other appropriate procedure at the appropriate time with proper notice.

successor. It is alleged that the Parus Patents "are currently assigned to and owned by Parus." Id.

In response to the motion to dismiss, plaintiff alleges that it did not just purchase patent rights. Instead, it is additionally alleged that plaintiff took over VE Systems, the division of Vail's business responsible for development and marketing of the System. See Compl. ¶ 7; Pl. Answer Brief [28] at 3. Further, plaintiff alleges:

> Part and parcel of that business are the System itself, the two Parus Patents that protect the System, the marketing plan which Swartz was initially hired to develop and implement, and the continued employment at Parus of former Vail employees and management personnel, including Alex Kurganov, the primary innovator and inventor of the System and Parus' Chief Technology Officer.
>
>                 * * *
>
>     In this case, control of "a portion" of Vail's business "changed hands" when Parus became the successor-in-interest to Vail's web telephony business, VE Systems. See Complaint ¶¶ 2, 7. This change in control was much more than a mere assignment of patent rights. Instead, it was the continuation of that portion of Vail's business responsible for the development and marketing of the System. While Vail continues to exist as an ongoing, independent corporation, that portion of its business built around the development and marketing of the System exists only in Parus.

Id. at 3-4.

The parties do not cite, and the court has not found, any Illinois law addressing the question of when a successor organization succeeds to the attorney-client relationships of its

- 14 -

predecessor organization. This question arises, however, in two general types of situations. One is whether a successor organization has the power to assert and waive attorney-client privilege and/or seek to disqualify opposing counsel based on an attorney-client relationship that existed with the predecessor organization. See, e.g., Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985); Postorivo v. AG Paintball Holdings, Inc., 2008 WL 343856 (Del. Ch. Feb. 7, 2008); American Int'l Specialty Lines Ins. Co. v. NWI-I, Inc., 240 F.R.D. 401, 405-08 (N.D. Ill. 2007); Soverain Software LLC v. Gap, Inc., 340 F. Supp. 2d 760 (E.D. Tex. 2004); Tekni-Plex, Inc. v. Meyner & Landis, 674 N.E.2d 663 (N.Y. 1996). The other is the present type of situation where a successor organization seeks to hold attorneys for the predecessor organization liable to the successor organization based on malpractice or similar claims. See, e.g., Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P., 178 S.W.3d 40, 44-45 (Tex. App. 2005). The same legal principles apply to both situations. See, e.g., id. at 44 (citing Weintraub, supra; In re Cap Rock Elec. Coop., Inc., 35 S.W.3d 222 (Tex. App. 2000)).

Following Weintraub, the analytical focus is on whether control of the predecessor organization passed to the successor organization. See Weintraub, 471 U.S. at 349; NWI-I, 240 F.R.D. at 405; Soverain, 340 F. Supp. 2d at 763; Cap Rock, 35 S.W.3d

at 227; Tekni-Plex, 674 N.E.2d at 668. The cases agree that a mere transfer of some assets without more does not transfer the attorney-client relationship. See NWI-I, 240 F.R.D. at 406; Soverain, 340 F. Supp. 2d at 763; Greene's Pressure, 178 S.W.3d at 44; Zenith Elec. Corp. v. WH-TV Broad. Corp., 2003 WL 21911066 *1-2 (N.D. Ill. Aug. 7, 2003); Cap Rock, 35 S.W.3d at 227; Tekni-Plex, 674 N.E.2d at 668. Cases also hold that a transfer of the relationship can occur in situations involving the sale of less than all the organization's assets. See Postorivo, 2008 WL 343856 at *6-8; NWI-I, 240 F.R.D. at 406; Coffin v. Bowater Inc., 2005 WL 5885367 *2 (D. Me. May 13, 2005); Soverain, 340 F. Supp. 2d at 763.

The cases generally turn on the particular facts and circumstances of the transfers and relationships between the predecessor and successor organization. Since based on particularized facts, whether the various cases are consistent with each other is not readily discernible. Regardless, the better reasoned rule, and the one that appears to be followed by the majority of recent cases, is the general standard enunciated in Soverain and Tekni-Plex. NWI-I summarized it as follows:

> In Soverain Software LLC v. Gap, Inc., 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004), the court found that the mere transfer of some assets does not transfer the attorney-client privilege. However, the court noted that such a "bright-line rule does not apply equally to the myriad ways control of a corporation or a portion of [a]

corporation can change hands." Id. Therefore, the court found "the more appropriate rule to be 'whether the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction.'" Id., citing Tekni-Plex, Inc. v. Meyner and Landis, 674 N.E.2d 663, 668 (N.Y. 1996). The Soverain court stated that:

> If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well.

Because the plaintiff in Soverain not only acquired certain assets but also continued to operate the particular enterprise it purchased, the court found that control of the enterprise, and with it the right to assert the attorney-client privilege, passed to the plaintiff. Id.; see also, Coffin v. Bowater Inc., 2005 U.S. Dist. LEXIS 9395, *7-8 (D. Me. 2005).

NWI-I, 240 F.R.D. at 406.

Here, plaintiff alleges that it alone acquired the entire division of Vail responsible for developing and marketing the System. Such acquisition was not limited to obtaining rights to the System, but also included taking on employees and managers from the division. On Banner's facial challenge to plaintiff's standing, it cannot be found that this acquisition did not include the transfer of the attorney-client privileges and relationships that had existed between Vail and defendants, which

only pertained to the System.  Counts II and IV will not be dismissed based on lack of standing.

Citing only a one-sentence alternative holding in a one-paragraph memorandum decision of a New York appellate court, Banner contends plaintiff is not entitled to recover the attorney fees it incurred in seeking to disqualify Banner in the Federal Suit because it should have sought such fees in the Federal Suit.  See Estate of Steinberg v. Harmon, 686 N.Y.S.2d 423, (N.Y.S. Ct., App. Div. 1999) ("In any event, as the motion court noted, the request for fees, if recoverable, should have been raised in the proceeding in which the disqualification occurred.").  Under Illinois law, damages in a malpractice action include fees incurred attempting to rectify the attorney's malfeasance as long as the plaintiff satisfies its burden of showing proximate causation.  Sterling Radio Stations, Inc. v. Weinstine, 328 Ill. App. 3d 58, 765 N.E.2d 56, 61 (1st Dist. 2002); TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes, P.C., 2001 WL 630670 *2-3 (N.D. Ill. May 31, 2001).  As long as causation is satisfied, this includes fees incurred seeking disqualification. TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes, P.C., 2002 WL 31870528 *1-2 (N.D. Ill. Dec. 20, 2002).  The cited New York case will not be followed.  Count I will not be dismissed based on the contention related to fees for pursuing disqualification.

Banner contends an ITSA claim is not adequately alleged because it is not alleged that Banner used the alleged trade secret in its business. Instead, it is alleged that Banner provided the confidential patent information to Call (after he left Banner) who then used it to assist Swartz in Swartz's business.[10] In support of its argument, Banner relies on a statement of the elements of an ITSA claim that includes as the last element that the trade secret was "used in the defendant's business." That formulaic recitation appears in many cases, see, e.g., Arcor, Inc. v. Haas, 363 Ill. App.3d 396, 842 N.E.2d 265, 269 (1st Dist. 2005); Multiut Corp. v. Draiman, 359 Ill. App. 3d 527, 834 N.E.2d 43, 49 (1st Dist. 2005); Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003); Sentry Pool v. Wave Tec Pools, Inc., 2008 WL 3200837 *2 (C.D. Ill. Aug. 6, 2008); Fast Food Gourmet, Inc. v. Little Lady Foods,

---

[10]Banner's argument would not apply to the ITSA claim against Call who is clearly alleged to have used the confidential information in his business of representing Swartz as a client. Arguably, Banner's supplying of documents to Call was use of the documents in Banner's business of representing clients or Banner's subsequent representation of Swartz in the Federal Suit involved Banner's use of plaintiff's trade secrets in its business. Plaintiff, however, makes no such argument so a precise definition of "used in defendant's business" need not be developed. See generally Cognis Corp. v. CHEMCENTRAL Corp., 430 F. Supp. 2d 806, 812-13 (N.D. Ill. 2006) (discussing what constitutes "use" of a trade secret).

Inc., 542 F. Supp. 2d 849, 862 (N.D. Ill. 2008); United States Gypsum Co. v. LaFarge N. Am., Inc., 508 F. Supp. 2d 601, 623 (N.D. Ill. 2007), but those cases are rarely resolved based on the plaintiff's failure to allege or prove that element. No case has been cited or found where an ITSA claim failed because the alleged or proven use of the trade secret was not by the defendant itself, but by a person or entity to whom the defendant disclosed the secret information.

The origination of use in the defendants' business being an element of an ITSA claim appears to be Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992). The element first appeared in a published Illinois state court case in Strata Mktg., Inc. v. Murphy, 317 Ill. App. 3d 1054, 740 N.E.2d 1166, 1176 (1st Dist. 2000), citing a federal district court case, Magellan Int'l Corp. v. Salzgitter Handel GmbH, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (citing Composite Marine, supra). See also Delta Med. Sys. v. Mid-America Med. Sys., Inc., 331 Ill. App. 3d 777, 772 N.E.2d 768, 770 (1st Dist. 2002) (citing Strata, supra); Associated Underwriters of Am. Agency, Inc. v. McCarthy, 356 Ill. App. 3d 1010, 826 N.E.2d 1160, 1168 (1st Dist. 2005) (citing Labor Ready, Inc. v. Williams Staffing, LLC, 149 F. Supp. 2d 398, 411 (N.D. Ill. 2001) (citing

<u>Composite Marine</u>, <u>supra</u>)); <u>Multiut</u>, 834 N.E.2d at 49 (citing <u>Delta</u>, <u>supra</u>); <u>Arcor</u>, 842 N.E.2d at 269 (citing <u>Strata</u>, <u>supra</u>).

In <u>Composite Marine</u>, the Seventh Circuit cites the definition provisions of ITSA (now codified as 765 ILCS 1065/2) and <u>American Antenna Corp. v. Amperex Elec. Corp.</u>, 190 Ill. App. 3d 535, 546 N.E.2d 41, 44 (2d Dist. 1989) (defining misappropriation), as supporting that use in the defendant's business is an element of an ITSA claim. In <u>Amperex</u>, the court stated: "misappropriation of trade secrets occurs when a person acquires or discovers a trade secret by improper means or discloses or uses a trade secret in breach of a duty of confidentiality imposed on him by the nature of his relationship with the owner of the trade secret or reposed in him by the owner in disclosing the information, and the owner of the trade secret is damaged by this improper acquisition, disclosure or use." <u>Amperex</u> says nothing about the trade secret being used in the defendant's business. It only states that the owner of the trade secret must be damaged and that the damage could be caused by a use of the trade secret, or by its disclosure or acquisition. Consistent with <u>Amperex</u>, ITSA defines "misappropriation" as being "(1) acquisition of a trade secret . . .; <u>or</u> (2) disclosure <u>or</u> use of a trade secret . . . ." 765 ILCS 1065/2(b) (emphasis

- 21 -

added). Also consistent with Amperex, the provision of ITSA providing for a cause of action for damages measures damages by the actual loss or unjust enrichment "caused by misappropriation" or, if those cannot be proven, "the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." Id. 1065/4(a) (emphasis added).

Liebert Corp. v. Mazur, 357 Ill. App. 3d 265, 827 N.E.2d 909, 924-25 (1st Dist. 2005), is the rare case that actually discusses the use element of an ITSA claim. Relying on Amperex and the statutory definition of misappropriation and noting that Strata was resolved on an issue other than use of the trade secret in the defendants' business, Liebert held that use is just one of three ways--improper acquisition, unauthorized use, or unauthorized disclosure--in which misappropriation can be shown. Citing Amperex, 546 N.E.2d at 44, Liebert states the elements of trade secret misappropriation under ITSA are: "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by the misappropriation." Liebert, 827 N.E.2d at 925. Accord MPC Containment Sys., Ltd. v. Moreland, 2008 WL 2875007 *9-10 (N.D. Ill. July 23, 2008). See

also Cognis Corp. v. CHEMCENTRAL Corp., 430 F. Supp. 2d 806, 811-12 (N.D. Ill. 2006). For the reasons discussed above, it is believed that Liebert more accurately states the elements of an ITSA misappropriation claim than those cases indicating use in the defendants' business is a necessary element.

Plaintiff alleges that Banner improperly disclosed to Swartz trade secrets of plaintiff. It is alleged that Swartz's use of that information harmed plaintiff. Banner does not raise a sufficient basis for dismissing Count V.

Banner contends plaintiff is statutorily prohibited from recovering punitive damages because all its claims are for legal malpractice. Illinois law provides: "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." 735 ILCS 5/2-1115. Plaintiff concedes that it cannot recover punitive damages on Counts II and IV.[11]

_____

[11]This concession also applies to the claims in those counts made against Call and Nelson and the Count III claim against Call.

- 23 -

Section 2-1115's prohibition applies to all claims of legal malpractice. Citing Brush v. Gilsdorf, 335 Ill. App. 3d 356, 783 N.E.2d 77, 81 (3d Dist. 2002), plaintiff contends § 2-1115 does not apply to legal malpractice claims "characterized by wantonness, malice, oppression or other circumstances of aggravation." There is no such holding in Brush. The cited passage of Brush is simply reciting the punitive damages standard of Illinois as part of an alternative holding that, even if § 2-1115 did not apply to that case, punitive damages were not possible because the plaintiff had not alleged facts meeting the cited standard. See id. Plaintiff can only recover punitive damages on Counts I and V if the claims stated therein are not legal malpractice claims.

Plaintiff contends his Count I claim is for breach of a fiduciary duty that is distinct from a legal malpractice claim. Illinois law, however, is clear that a distinct breach of fiduciary duty claim generally cannot be brought against an attorney by a client. See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C., 385 F.3d 737, 744-45 (7th Cir. 2004). "The claim, in substance and without regard to how it might be characterized, is that the Sandberg law firm represented the adversaries--a corporation (Midwest) and its

swindling president--in a derivative action and used its dual
representation to prevent the corporation from recovering assets
of which the president had wrongfully deprived the corporation;
that the law firm had wrongfully accepted payment of its fees
from the corporation (the client whose interests the firm had
sacrificed); and that it should therefore be required to rebate
('disgorge') the fees to Hoagland for the benefit of the
corporation. An attorney's throwing one client to the wolves to
save the other is malpractice, [citations omitted] whatever the
plaintiff chooses to call it. [Citation omitted.] [The
plaintiff] cannot be permitted, by recharacterizing the
claim--whether by calling the conflict of interest a breach of
fiduciary obligation or by contending that his contract with the
law firm contained an implied promise not to commit such
conflicts--[avoid having the claim be a legal malpractice claim].
That is the kind of formalist[ic] move that courts rightly
reject. Illinois courts hold that 'when a breach of fiduciary
duty claim is based on the same operative facts as a legal
malpractice claim, and results in the same injury, the later
claim should be dismissed as duplicative.' [Citations omitted.]"
Id. at 744.

Here, plaintiff fares no better. Plaintiff's Count I claim alleges Banner violated the professional conduct rules and thereby breached confidences and engaged in a conflict of interest. The "nature of the behavior alleged," Brush, 783 N.E.2d at 80 (quoting Safeway Ins. Co. v. Spinak, 267 Ill. App. 3d 513, 641 N.E.2d 834, 837 (1st Dist. 1994)), is legal malpractice. The prayer for punitive damages in Count I will be stricken.

Banner also contends that § 2-1115 applies to the Count V ITSA claim. As previously stated, one element of the ITSA claim is an unauthorized disclosure. Banner argues that the basis of the unauthorized disclosure is the alleged violation of the confidential attorney-client relationship and therefore an aspect of the ITSA claim is legal malpractice. It is true that breaching a confidential relationship can be an improper means of acquiring a trade secret. See 765 ILCS 1065/2(a).[12] A successful ITSA claim, however, also requires showing that the information constituted a trade secret and that its disclosure or

_____

[12]In the present case, this is not the only means of showing misappropriation. It could instead be shown that defendants were aware that plaintiff was maintaining the secrecy of the patent proposals and that defendants' duty to maintain secrecy arose from those circumstances. See 765 ILCS 1065(b)(2)(B)(II).

use caused damage. The existence of a trade secret is an element of the claim that is completely distinct from a legal malpractice claim. Plaintiff has an ITSA claim that is distinct from his legal malpractice claims. The prayer for punitive damages will not be stricken in Count V.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [7] is granted in part and denied in part. Plaintiff's prayer for punitive damages is stricken except as to Count V. Within two weeks, defendant Banner shall answer the Complaint. All discovery is to be completed by February 27, 2009. A status hearing will be held on October 29, 2008 at 11:00 a.m. at which the parties shall submit a discovery scheduling plan that includes deponent name, date, time, and place for all depositions that will be taken in this case.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 9 , 2008